Observations op D. Durany on this case.(a.)
On perusing the record, I am strongly of opinion that the judgment of the Provincial Court ought to be reversed, and that the practice affords no legal reason for maintaining it; but what may be the opinion of the Court of Appeals, I should be more confident in predicting, if the judges were lawyers by profession, than I am on the consideration that they are not. Before the 9th and 10th Win. III. there were at law, submissions by rules of Court, and an award being made thereon, the same process issued, as in . the other cases of breach of rule, id est by attachment; but there never was a judgment given, except wliere there was the security of a verdict, which was frequently the practice, nor could there be such judgment on the foundation of an award.
*249 It would be unnecessary to cite cases at law, in order to shew the method used, for compelling the observance of awards. The preamble to the 9th and 10th Wm. III. having set it forth.
The method by rule of Court, and there being no instance of a judgment being entered, merely on the foundation of an award, are the strongest proof, that it was deemed to be impracticable. The statute takes the method before pursued at law, as the substratum of its modifications. It recites, that the person was liable to imprisonment; it would have recited too, that the estate was liable to be applied, had judgments ever been entered. What Littleton observes, sect. 108. on the statute of Merton, si párenles conquerantur, is more applicable to this case j for as the rule of Court was introduced, to avoid the vexations, and dilatory proceedings on bonds and awards, so would tb ‘ practice have obtained to enter judgments, if consistent with the office and duty of Judges. Perhaps it might be proper to suggest a legal reason, why such judgments never were entered, though it might be sufficiently inferred from the non-user, that a legal reason must have subsisted. The appointment, or commission of a Judge, being incommunicably personal, his duty or office cannot be performed by a substitute, which would be the case of a judgment, were it to be necessarily consequential to an award. If it be said that a rule is in the nature of a judgment, it may be admitted, if the consequences are not carried too far. They are so far of the same nature, that they are both obligatory, as authoritative judicial acts, and there is a power to compel their observance : but they essentially vary in the qualities, and extent of their operation. Judgment once given, cannot in another form for error in law, be altered by two Judges who gave it, non patitur regression. The forms of judgments are technically, and precisely ascertained. Rules may be altered at any time ; their terms are arbitrary and varying. Judgments are attended with notoriety, rules require actual notice. Judgments are permanent, affecting the person and estate, and the representatives of *250 both ; rules are transitory, and affect the person only, and - the process relative to each, differs with the qualities of each.
But it appearing by the record, that the reference or submisssion, was in pursuance of the statute, the question comes to this; whether it is to be supported by any construction of it ?
By the statute the party refusing, &c. shall be subject to all the penalties of contemning a rule of the Court wherein he is a suitor, and the Court on motion, shall issue process accordingly. The party has to the last day of the next term after arbitration, &c. to complain of corruption oí undue practice.
Nothing can be plainer, than that by the terms of the-statute, an award is to be enforced by process of contempt, and that too upon motion, not requisite for an execution or a judgment, and so are all the cases determined upon the statute, which are infinite, and not by ca. sa. fi. fa, extend, fac. elegit) the proce.ss which a judgment would justify. This is so clear, that it cannot be proved per notiora. In the case of Webster and Bishop et al. Free. Chan. 223. it was settled on consultation with the judges, it being a matter in which all the Courts were concerned, that upon an award on submission by rule of Court, after the award had been established, and affidavits and attachments had issued, the party against whom the award was made, having died, all proceedings determined by the death of the party, and could not be revived or carried further. In this case, could a decree on judgment have passed without doubt on this great consultation, the propriety of it would have occurred, and could a judgment have passed at law, a decree would have passed in equity; it being plain from the view of the consultation, that the same principle in a matter which concerned all the Courts, was intended to be established both at law and in equity ; and if there is any difference between the Courts, a Court of Equity was more likely to dispense with the statute, than a Court of Law, as it *251 does in many cases, and especially as a bill there is proper for carrying an award into specific execution.
But, admitting that a judgment might, consistently with the statute, be entered on the foundation of an award, yet certainly not till the last day of the term after the award; for till then the party has time by the statute to object to the award. The result is, after the form in which judgment has been entered, it cannot be set aside by the Judges who gave it: whatever, therefore, might be the corruption, or undue practice of the arbitrators, it appearing by the record, that judgment was entered at September term, the party has been deprived of the advantage expressly given him by the statute, and therefore the judgment cannot be agreeable to, or supported by it, in the manner in which it has been given.
Authorities having sometimes more weight than legal reasoning, perhaps the following case may not be inapposite : A defendant entitled to an imparlance, is denied it by the Court, this is error; for the law allowing time to make defence, the depriving the defendants of this privilege, is an act against law, and erroneous; whether the defence would be eifecual or not, or whether any would be made, cannot be considered: so, in the present case, time is given by the statute to the last day of the next term, and the judgment was rendered the term before, and therefore the judgment in the manner was against the statute.
In the case of The King v. Murray, (the Pretender’s secretary,) there was time given in the act of attainder for the rebels to surrender by a certain day prefixed, and take their trial. He was apprehended by some of the King’s troops before the day; but was allowed to have the benefit of a voluntary surrender; for he was not to be deprived of the time given by the act, though there was reason to infer, from many circumstances, his intention of escaping beyond sea. I do not know that this case is in any printed book, unless taken notice of in Lord Lovett’s case.
Supposing that a judgment might be given upon the award, and that too without waiting till the last day of the *252 next term, yet a judgment ought not to be given before the award.
It appears by the record, that the judgment was rendered on the 10th of September, that being September term, and the award was given the 26th September, 1765. The record is to be taken pro vertíate, and nothing contrary to it can be alleged; the award, therefore, of the 26ih September, can be no foundation for the judgment of the 10th; then the judgment must be taken to have been given on the declaration and plea; but these afford no foundation for its support. Suppose the date of the award to be rejected, though the date is part of it, in order for the intendment that the award was subsequent to the submission, and prior to the judgment, then upon the matter, the case will turn out to be, that the submission was made on the 10th, the award on the 10th, and the judgment on the 10th. Can such a snapping judgment be agreeable to the statute, which gives time for objection ?
If this exception is to be answered by the Court of Appeals taking notice of the practice below, the state of that practice will prove the extreme illegality of it. ' Reference is made in a term. The cause is discontinued. The award is made. The judgment is entered as of the term of the submission. The cause being out of Court, the judgment follows ministerially the award. Let the corruption, or undue practice, be never so flagrant, the party can have no relief, the matter can never come before the Court. This is delegating the judicial power to the arbitrators, to all intents and purposes, and that too against the express words of the statute, by which an award is to be set aside for corruption or undue practice. Again: By the statute, the process on the award is merely in personam.; on the death of the party (as appears by the case in Chanc. Free.). all proceedings fall, but, upon such a judgment as the present, not only the person, but the estate real and personal, and the representatives of both would be liable. Further, a purchaser would be liable, for, put the case of a mesne purchaser between the submission and the award, and the *253 judgment being entered as of the day of the submission, the judgment would be a lien on the land on that day, and consequently overreach the purchaser.
But admitting, notwithstanding any thing yet offered, that no cause for reversing the judgment appears; yet surely there ought to be some premises in the record for justifying the judgment. The plea of non assumpsit, untried, even unanswered, cannot justify it. The award, or nothing, will justify; but for this to do it, the judgment ought to pursue the award. The award is, that the defendant pay to the plaintiff 215/. 17s. 6d. currency, to be released on the payment of 215/. 17s. 6d. Pennsylvania currency. The species of money are different, their value different. It was for the advantage of the defendant to have the alternative, and the award gives it. But the judgment is absolute, and is against the person and estate of the defendant, against his heirs, executors and administrators, nay, against all intermediate purchasers, (if any are,) for 215/. 17s. 6d. current money of Maryland, for such does the term current money import. Can it be said, that the judgment agrees with the award ?
N. B. Should the judgment be reversed, the Court above can do nothing to enforce the award, (vide the statute,) it not being the Court in which the submission was agreed to be made a rule, nor do I see what the Provincial Court can do; for the cause is there discontinued in fact, and a time has also run beyond the limitation of the act of Assembly.
Vide Co. Litt. 260. a. Records alterable during the term, but not after.
3 Salk. 168. Imparlance, when it appears by record to be due, being denied it is error. This is but a bad book, but the case is certainly law, and without doubt many cases to the like effect may be found.
The resolution of the Provincial Court, on the subject of references by rule of Court, appears to me to be a most extraordinary measure, and, when connected with the occasion of it, a most extravagantly irregular one.
*254 The duty of judges is jus dicer e, not jus condere. The departments of the executive and legislative authority, are distinct for very important reasons, and ought to be kept so. Judges ought to dispense right and justice; but nothing is right or justice, civilly or legally speaking, but what the law has declared to be so. The idea of the right and justice being settled, the idea of violence and wrong is given of course; law being that rule for men’s conduct in society, which the will of the legislature has declared to be obligatory. The dispensing of right and justice presupposing right and justice, and right and justice being that only which the legislature has willed to be so, it follows, that Judges cannot'make law; but if they take upon themselves to frame a regulation, in prospect, which is to govern in future, and which they have so framed, not to determine a case existing’ before them, but for the determination of cases that may happen, they essentially assume a power legislative.
The occasion makes this measure the more singular. Their judgment was reversed by their superiors ;. absitquc invidia verbo. They examined into the reasons of then-superiors. How ? not by inspecting that which could only notify them — the record; but by asking them privately, and reporting them. But, to the purpose of what is now depending, I think what they have done will furnish a topic of argument.
The Judges of the Provincial Court at least will suppose, that what they themselves did was right, when they entered into the resolution alluded to; but they cannot possibly imagine it to be right, if they believe that the Court of Appeals determined otherwise. It must therefore be taken, pro confesso, that a judgment may be properly entered upon an award. The rule of reference was, therefore, proper. If, then, there had not been some impropriety in the award, or in the manner of framing the judgment, all would have been regular, and the plaintiff might have proceeded by execution.
*255 Will it be said, that the award was improper ? Be it so. But will the Court then proceed upon an improper, as if it were a proper award ? Was the judgment improper in the frame of it? Can this Court, at this time, after the matter has been taken from their cognizance by appeal, resume the business, and alter the feature of the judgment ? When the resoluton was entered into, the Court were of opinion, that a judgment upon an award was proper; they were satisfied, too, that the Court of Appeals thought so. If the law was so, when the resolution was entered into, the law was so when the judgment was passed ; for there has been no intermediate legislative act, and it would be a reflection upon the Court to insinuate, that they did not mean to declare what was law, but to make a law. The matter, then, comes to this. The Court of Appeals allowed there might be a judgment upon an award; though they reversed this judgment because improper. Can any instance be cited to prove, that where a judgment has been reversed in a superior Court, because defective in the frame of it, that the inferior Court has resumed the matter, and rectified the defective frame, or that the inferior has proceeded as upon rule, and the doctrine of contempt? Who ever heard of a rule upon a defendant to pay money found to be due by a verdict, and a proceeding on the failure by way of contempt? The Court must give their judgment, and the party proceed upon that. This case is stronger, for a judgment was actually given, and a judgment is as much consequential to an award, as to a verdict, if a judgment is proper upon an award, the point settled by the Court. But there is no judgment, because it is reversed. Then put the case of the verdict, and the judgment thereon, reversed in a superior Court, and the inferior proceeding by way of contempt, and the absurdity will be more striking.
Again, if a judgment might have been proper, the Court not only upon the general principle suggested, were obliged to proceed to judgment; but, upon the particular case, ought to have done so, because their own interlocutory *256 order made up the agreement of the parties, which expressly requires a judgment.
If no judgment can be entered upon an award, then the resolution of the last Court ought to be unresolved, and still, when that is done, the Court will have nothing to do with Lhis matter, because that would be to proceed apparently on the contract of the parties, but really on the will and pleasure of the Court, substituting a rule to which the parties did not agree, in the place of another they did agree to; and yet neither the Court nor the arbitrators had any thing to do with the subject, but as it was constituted by the agreement of the parties.
Though I may think some of your objections stronger than others, yet it is no reason that you should not try all of them.
If the defendant is to be bound by the award, it must be because founded upon his agreement to leave his dispute to this kind of decision ; for if there had been no such agreement, the Court could have no authority to put the business out of the common tract of a legal compulsory proceeding. The agreement being the foundation, and the act of the party continued by the Court’s approbation or admission, it cannot be altered by the Court's controul, or interposition. The. agreement was, that the cause should be referred, and the award be the judgment of the Court. This was admitted by the Court, at the time of the reference, and afterwards confirmed by the act of the Court, in giving judgment; how then is the defendant liable, either on the judgment, the award, and the reference, all these steps constituting the agreement, and execution of it, till it passed into, and was absorbed in the judgment, or not at all. By his agreement, he was not to be liable till the judgment; if he is made liable in any other manner, he will be subjected to a different thing, than he agreed to subject himself to; thus the Court will set aside the actual agreement, and substitute another, in order to make him subject to contempt, which mo one understood, at the time when the reference was made, was to be the consequence : *257 that is, the result will be, that the Court by their authority, shall compel what the agreement only of the party renders obligatory.
Again : There either is a judgment or not; if there is, the Court cannot set it aside, but must proceed upon it; if there is not, then the agreement of the parties remain unexecuted because part of it is that there should be a judgment, and therefore the application is too late, or too soon. Too late, if there is a judgment, to take notice of any precedent matter; too soon, if there be not a judgment, for the Court to enforce any thing, for something then remains to be done, that ought to be done.
Again: The records shew that there has been a judgment; why do they not proceed upon that? They will answer, Because it was reversed. What is the nature of a writ of error ? It gives authority to the Court above, not only to reverse or affirm generally, but to correct and amends in a word, to do that justice between the parties, that the inferior Court ought to have done. Vide Cro. Car. 442. 1 Vent. 27. Cro. Car. 509. 512. Cas. in Pari. 57. and other cases.
What was proper to be done in the case, on the reversal, if any thing besides a reversal was proper, was the duty and the province of the superior Court. When removed to the Court of Appeals, there was aliud examen, and this Court had nothing more to do with the cause. As, when the cause was removed, it fell under the cognizance of a superior judicature, so, when the judgment was given, there was an end of every thing. Besides, the cause is out of Court for another reason suggested in your first query, which is throughout, I think, very material, and ought to be pressed.
Lastly. Judges are not at large to proceed upon information in pais. They must look neither to the right nor to the left, but steadily upon their records, or, if other ¿records become material, upon them.
The judgment has been reversed altogether and generally. This Court will not say that their superiors were *258 mistaken. The judgment above must be taken to be right; there is no controul here. It is not a game at shuttle-C€,'k* If the judgment be right, the Court did right; but they did not do right, unless justice was done to both parties by the general reversal; if any other measure was propei-, they had authority, and it was their duty to direct it. If this Court shall direct or pursue any step here, for what purpose would it be ? To do justice ? But full justice has been already done by the Court of Appeals. If this Court should say otherwise, they must take upon themselves to say, that the judgment of the Court of Appeals is erroneous. If this Court should proceed upon that opinion, they must undertake to controul the Court of Appeals. This would be ampliare jurisdictionem with a vengeance.
Much may be said about the reasons on which the Court of Appeals proceeded, and such tittle-tattle too often has weight. This Court should be therefore strongly pressed to take notice of nothing that is not judicial. All that this Court can know, is, that the judgment was reversed generally, because it is all that the record can shew. This Court, too, must conclude the judgment above to be right. Where there is no rule for judging, Courts will not undertake to determine. One person may suggest one reason for the reversal, and another a different reason. The counsel for the plaintiff may say -what they please, and so may the counsel lor the defendant. These may say the judgment was reversed for a fault before the reference, for a fault in the declaration, writ, or replication. Suppose this to be denied, how is the fact to be tried ? By a Jury, or by summoning the Judges of the Court of Appeals to give their reasons to Tour Honours, and you to determine the fact? or by ex parte extrajudicial evidence ?
N. B. The paper was brought to me, just as I was getting upon my horse. An immediate answer was required, and therefore I can only throw out a few crude hints.

 It is well known by the cotemporaries of Mr. Dulany, that his legal talents were held in such high estimation both by the Court and the gentlemen of the bar, that they were constantly in the practice of taking his opinion on litigated points ofimportance<